UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA )
 )
 ) Criminal Case No 1:24-cr-0003-6 SM
 V. )
 )
 )
Angela Demarco )


**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR
A DOWNWARD DEPARTURE AND GUIDELINE VARIANCE**

 Angela Demarco requests that this Honorable Court sentence her to 12 months to 12 months and 1 day, followed by a term of three years of supervised release. Ms. Demarco requests conditions of release to complete the intensive outpatient treatment Acorn program in Hookset, NH, with aftercare.  Further conditions of supervised release involve continued mental health treatment with Eastern Light Psychiatry in Concord, NH. (PSR ¶ 72)

**Request for a Downward Departure and Guideline Variance**

 The defendant pled guilty to drug sales of 2.9 grams of methamphetamine on January 4, 2023, and to 26.86 grams of methamphetamine on February 8, 2023.  The agreed upon weight set forth in ¶ 6(b) of the plea agreement is 29.76 grams of methamphetamine. (PSR ¶ 9) [1]

 Probation calculates the total offense level of 25 and a criminal history category II, for a guideline sentencing range (GSR) of 63-78 months. (PSR ¶ 90) The defendant agrees to a criminal history category II but calculates the GSR as a total offense level of 13 and a criminal history of II, the GSR is 15-21 months.

 The defense requests that the Court, as in U.S. v. Nathaniel Carr, 18CR00158-SM declare a "categorical policy disagreement with respect to the 'ice/actual' methamphetamine drug weight guidelines." (PSR ¶ 108)

 Even by the defendant's calculations, a 12 months to 12 months and 1 day sentence requires a minor downward departure of 3 months and a variance from the sentencing guidelines.

---

[1] If the Court uses the "Methamphetamine Actual" or "Ice" calculation the defendant is a base offense level 26 USSG Section 2D1.1(7), at least 20 grams but less than 35 grams.  If the Court uses the "Methamphetamine mixture" the defendant is a base offense level 18 USSG Section 2D1.1(11), at least 20 grams but less than 30 grams.

1

This sentence is appropriate for the crimes charged, the defendant's criminal history and is "sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a).

**Authority to Impose a Sentence Outside the Advisory Guideline Range**

United States v. Booker 543 U.S.220(2005) authorizes this Court to impose a sentence outside of the sentencing guidelines. Although sentencing begins with the Court calculating the guideline range, the guidelines are merely advisory, and the district courts are required to consider all factors listed in 18 U.S.C. § 3553(a).

**SENTENCING ISSUES**

**The defendant objects to Probations calculation of the total offense level of 25. The defendant objects to the relevant conduct analysis and calculates a total offense level of 13 and criminal history category of II.**

**The Defendant's Objection to "Relevant Conduct" Evidence proffered by Probation**

¶'s 25, 26, 27 Objection.  This incident is not relevant conduct, and the weight should not be counted.

The defendant objects to an additional sale cited by probation as "relevant conduct" of 112.3 grams of methamphetamine from co-defendant Thomas Conway to the CI on December 15, 2022.  The government was aware of this incident when they drafted the plea agreement, and this sale is not in the agreed upon statement of facts.

Probation accurately sets forth the facts of this incident, but it is not relevant conduct under USSG § 1B1.3.  Probation notes at (PSR ¶ 25) "Controlled Buy: December 15, 2022" involving a sale of 112.3 grams of methamphetamine from co-defendant Thomas Conway to the CI. The buy was set up through a telephone call with Conway, not Demarco.  Conway arrived at the scene of the transaction in the front seat of a Mercedes driven by co-defendant Raich. Demarco was in the back seat.  The transaction took place when Conway left the Mercedes, entered the CI's car and completed the hand-to-hand transaction.  First Circuit Jury Instructions 4.18.371(1) Conspiracy, 18 U.S.C. § 371; 21 U.S.C. § 846, state in part; "Mere presence at the scene of the crime is not enough…" Demarco was not even present at the scene of the crime for the transaction.

United States. v. Bryant 571 F. 3d. 147, 160 (1st Cir. 2009) notes:

"we note an important limiting principle that " 'not every drug transaction undertaken by every drug trafficker is necessarily linked in a meaningful sense.' " United States v. Santos Batista, 239 F.3d 16, 21 (quoting United States v. Sklar, 920 F.2d 107, 111 (1st Cir.1990)). The

2

sentencing judge must " find a sufficient link between the acts charged and those included for sentencing purposes." Id. If the district court cannot find a sufficient link, " 'offenses of the same kind, but not encompassed in the same course of conduct or plan, are excluded.' " Id. (quoting United States v. White, 888 F.2d 490, 500 (7th Cir.1989)). We have remarked that " [i]solated acts cannot be conjoined and drug quantities aggregated for sentencing purposes without a rational basis." Sklar, 920 F.2d at 111."  Bryant at 160.

There is no rational basis to find a sufficient link between the December 15, 2022, sale from Conway to the CI and direct sales from Demarco to the CI on January 4, 2023, and February 8, 2023.

¶ 31 Request for modification.

Counsel will update the Court regarding the status of this paragraph.

¶'s 36 and 37 Objection in part.

The defendant calculates two separate base offense levels. If the Court uses the "Methamphetamine Actual" or "Ice" calculation the defendant is a base offense level 26 USSG Section 2D1.1(7), at least 20 grams but less than 35 grams.  If the Court uses the "Methamphetamine mixture" the defendant is a base offense level 18 USSG Section 2D1.1(11), at least 20 grams but less than 30 grams.

¶ 42 Objection

The adjusted offense level is either level 26 (Methamphetamine Actual or "Ice") or level 18 (Methamphetamine Mixture)

¶ 46 Objection Total Offense level calculations

The total offense level is either level 21 (Methamphetamine Actual or "Ice") or level 13 (Methamphetamine Mixture)

¶ 90.  Objection. Guideline Provisions.  Under Methamphetamine Actual or "Ice" the total offense level of 21 and a criminal history of II, the GSR is 41-51 months.  Under Methamphetamine mixture the total offense level of 13 and a criminal history of II, the GSR is 15-21 months.

**The Defendant Requests the Court declare a "categorical policy disagreement[2] with respect to the 'ice/actual' methamphetamine drug weight guidelines."**

If the Court uses the "Methamphetamine Actual" or "Ice" calculation the defendant is a

---

[2] Counsel reviewed the docket sheet of U.S. v. Nathaniel Carr, 18CR00158-SM and did not find a written decision of this Court.  The defense adopts the analysis of Judge McCafferty in U. S. Bean 18-cr-057-03-LM

base offense level 26.  Crediting her -3 points for acceptance of responsibility and -2 points for reasons that will be made known to the Court results in a total offense level of 21, criminal history II, GSR is 41-51 months.

However, the defendant requests that this Honorable Court sentence the defendant on a methamphetamine mixture of the same quantity, employ the sentencing methodology that is set forth by Judge McCafferty in in United States v. Bean Criminal No. 18-cr-057-03-LM and find a a base offense level 18 USSG Section 2D1.1(11), at least 20 grams but less than 30 grams.

Judge McCafferty wrote: "The court will…: (1) calculate the guidelines sentencing range using the purity-driven methamphetamine guidelines; (2) recalculate the guidelines using the base offense level for the same quantity of methamphetamine mixture; and (3) evaluate whether any upward or downward variances are appropriate based upon the individual characteristics of the defendant and the other § 3553(a) factors." Id. at p. 21.

Under Methamphetamine mixture the defendant is a base offense level 18.  Crediting her -3 points for acceptance of responsibility and -2 points for reasons that will be made known to the Court results in a total offense level of 13, criminal history II, GSR is 15-21 months.

**Argument in Support of Sentencing Recommendation**
**Characteristics of the defendant**

Unfortunately, like most defendants charged with narcotics crimes, Ms. Demarco, now 43 years of age, has struggled with her own addiction to various substances including heroin/fentanyl, which she used from the ages of 17-21. She stopped using fentanyl when she was pregnant with her daughter, Mia Demarco. She relapsed at the age of 37 when she began using heroin/fentanyl and methamphetamine simultaneously with a former boyfriend, and father of her child, Joshua Garrett. She estimated that she used one gram of methamphetamine and a few grams of heroin/fentanyl daily. She had one overdose, at age 39, where Narcan was administered.  (PSR ¶ 75) She stopped using heroin/fentanyl since her arrest on February 7, 2024. Ms. Demarco has continued to struggle with methamphetamine use.

Knowing she needs to address her addiction, Ms. Demarco entered and completed the 90 SOAR program at the Merrimack County House of Corrections graduating on June 20, 2024. (Exhibit 1, PSR ¶'s 7,76)  She was released on pretrial supervision on July 23, 2024, and she entered and completed the partial hospitalization program and the intensive outpatient treatment programs at New Freedom Academy, in Salem, NH. She completed the latter program on

September 30, 2024. (PSR ¶'s 8, 76) Ms. Demarco also completed the intensive outpatient treatment program at East Point Recovery (Exhibit 2) on September 3, 2025, and the Acorn Center in Hookset, NH, which she completed on February 4, 2026. (PSR ¶'s 8, 76)

In October of 2025, Ms. Demarco was admitted to the LASER docket program. She completed Phase I in February of 2026 and began phase II thereafter. However, her record of treatment is not without blemishes, and the PSR (¶'s 8, 8A) details numerous instances for non-compliance with drug treatment involving positive drug tests that resulted in her termination from the program on March 11, 2026.

In correspondence with probation officer Karin Hess on April 20, 2026, counsel learned that drug tests on December 16, 2025, February 13, 2026, and February 17, 2026, "her urine screens returned with results for amphetamines due to her prescribed medication for Adderall.   Sean (probation officer Buckley) will address the Court on the day of sentencing and inform the Court of this information."  The defendant acknowledges and takes full responsibility for other numerous failed drug tests and improper behavior while in LASER docket.  This information is only presented so the Court gets a fuller picture of her case and understands that three of those positive drug screens were because of prescribed medication.

Ms. Demarco has been detained at the Merrimack County House of Corrections since March 11, 2026.  She has continued her treatment through the Medication Assisted Treatment (MAT) program where she receives a daily suboxone prescription. While incarcerated, she has not been idle, she has worked in the kitchen, one 4–5-hour shift per day, approximately three days per week for the month of March and the beginning of April when she stopped working due to an injury sustained while exercising.

She has completed 15 hours of tablet courses while incarcerated such as "Thinking for the Future" cognitive behavioral therapy for 5 hours, "A guide through the 12 steps of recovery" for 3 hours, "Criminal impulsivity" for one hour 19 minutes, "Reflections and recovery from addiction" for one hour 10 minutes and several others. (Exhibit 3 certificates attached)

The history and characteristics of the defendant are difficult, and counsel requests the Court consider them in granting a variance.  The defendant grew up in a household where her father was verbally abusive, constantly yelling at her and her brother. Her father had obsessive compulsive disorder, and the verbal abuse was worse when he drank alcohol. (¶ 63)  She was in a relationship with co-defendant Michael Raiche who was verbally and physically abusive to her.

5

On one occasion, Raich punched her in the face and body because he believed she was driving irresponsibly, "by hitting a pothole." (¶ 67)  She ended the relationship with Raiche and went to a domestic violence shelter.

At the inception of this case she was "having some thoughts of suicide while she was detained for the instant offense but does not have any present suicidal thoughts." At the beginning of her incarceration, February 2024, she was hospitalized for self-injurious behavior, hitting her head on her jail cell bars, and was treated at hospital. Since release on bail, she had been seeing a psychiatrist at Eastern Light psychiatry in Concord, NH.  She has been diagnosed with ADHD, anxiety and OCD. Ms. Demarco feels this psychiatric treatment is helpful to her and requests continuation of this treatment upon her release. (¶'s 72,73)

**The sentence of 12 months to 12 months and 1 day avoids unwarranted sentencing disparities**

18 U.S.C. § 3553(a)(6) notes the Court shall consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  Undersigned counsel is acutely aware that he does not have access to all the information the Court has, namely the presentence investigation reports of co-defendants.  From publicly available information a sentence of 12 months to 12 months and 1 day is appropriate as it relates to her co-defendants.  Demarco is # 6 out of 13 indicted defendants and was responsible for 29.76 grams of methamphetamine.

From the plea agreement and the PSR, it is clear that Demarco was a minor player in the conspiracy to distribute narcotics lead by co-defendant's Thomas Conway, defendant # 3, and Michael Raiche, defendant # 5.

Raiche has been sentenced to 60 months imprisonment. The government argued that Raich was responsible for a methamphetamine mixture weight of 898 grams with a total offense level 27, criminal history II, with a GSR of 78-97 months.  Raich argued that he was responsible for a methamphetamine mixture weight of 453 grams with a total offense level of 23, criminal history category II, for a GSR of 51-63 months. Both the government and the defense were well below the probation department's purity "Ice" derived GSR of 121-151 months.

Demarco's is requesting a longer sentence than co-defendant #7, Robby Lewis, who was sentenced to time served, approximately 5 months. Lewis argued that he was responsible for a methamphetamine mixture of 27 grams with a total offense level of 13, criminal history category II, for a GSR of 15-21 months. Lewis asked the Court to vary from this range and sentence him

to time served.  The government agreed with the defendant's argument that he was responsible for a methamphetamine mixture weight of 27 grams with a total offense level of 13, criminal history category II, for a GSR of 15-21 months.   Both the government and the defense were well below the probation department's purity "Ice" derived GSR of 41-51 months.

From the publicly available information on the co-defendants, it is clear that Demarco's case is most like that of Robby Lewis, who the parties agreed was responsible for 27 grams of a methamphetamine mixture with a total offense level of 13, criminal history category II, for a GSR of 15-21 months.

This sentence for Demarco of 12 months to 12 months and 1 day is greater than the 5-month time served sentence of Robby Lewis and would avoid unwanted sentencing disparities among defendants with similar records

**Conclusion**

Angela Demarco accepts responsibility for her crimes. Narcotics sales and possession are not without victims, and she acknowledges the harm that she has caused to herself, society, and her family. A 12 month to 12 months and 1 day sentence with 3 years of supervised release incorporates the sentencing factors outlined in 18 U.S.C. § 3553(a). This sentence promotes respect for the law, provides punishment for the offense, deters further criminal conduct, and protects the public from further crimes.

The defendant asks the Court to impose this sentence because it is "sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a).

 Ms. Demarco requests credit for time held in detention from February 7, 2024, until July 23, 2024, (PSR ¶'s 2,5) and March 11, 2026, (PSR ¶'s 78A) until the date of sentencing, April 29, 2026.

Respectfully submitted,
For the defendant
Angela Demarco,

/s/ John V. Apruzzese # 268149
_____

81 Washington Street, Suite 206
Salem, MA 01970
MA #560999
Phone (978)-745-4232
jvapruzzeseesq@aol.com

7

8

Certificate of Service

I hereby certify that on April 21, 2026, I served a copy of the Defendant's Sentencing Memorandum and Request for a Downward Departure and Guideline Variance pursuant to the CM/ECF system which was sent electronically to the registered participants.

/s/ John V. Apruzzese # 268149

_____